GEORGE H. GIBSON, appellant, v. PERCY A. LAINSON, warden, appellee.

No. 48360.

(Reported in 60 N.W.2d 797)

NOVEMBER 17, 1953.

Roy E. Burns and A. J. Wassom, of Osceola, for appellant.

Leo A. Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Robert N. Johnson, County Attorney, of Fort Madison, for appellee.

SMITH, J.—Plaintiff was sentenced in 1926 to imprisonment for life upon conviction of the murder of Sheriff Collings of Union County.. He appealed and the judgment was affirmed. State v. Gibson, 204 Iowa 1306, 214 N.W. 743. The present proceeding is against the warden of the penitentiary where he has since been confined. The trial court denied his petition, holding "all the matters raised * * * have been adversely decided against the plaintiff in his appeal to the Supreme Court of Iowa. The court, for the purpose of this order, is assuming the facts stated in the present petition are true; but are all matters that should have been and were raised by plaintiff in his appeal."

I. The petition is captioned "in equity" but of course the proceeding "does not invoke the court's equitable powers and the appeal is not de novo." Cummings v. Lainson, 239 Iowa 1193, 1196, 33 N.W.2d 395, 397. See also Adams v. Stewart, 197 Iowa 490, 495, 197 N.W. 464. In this respect the present case differs from habeas corpus cases to determine custody of minor children. See Ellison v. Platts, 226 Iowa 1211, 1215, 286 N.W. 413; Lancey v. Shelley, 232 Iowa 178, 187, 2 N.W.2d 781.

II. The various matters here urged were (with one exception later referred to herein) all disposed of on the criminal appeal. State v. Gibson, supra. They did not involve the question of the court's jurisdiction and if they had merit they at most constituted error, reviewable on appeal.

We said in Reeves v. Lainson, 234 Iowa 1034, 1035, 14 N.W.2d 625, where there had been no appeal from the sentence: "It is not the purpose of a habeas corpus proceeding to determine the guilt or innocence of the petitioner of the crime for which he is incarcerated, nor to pass upon errors in his trial, nor to retry the facts and pass upon the sufficiency of the evidence to sustain the charge. * * * The appellee [petitioner] had his opportunity to appeal. The judgment is not void and he cannot attack it collaterally by habeas corpus."

Petitioner cites no case that announces a contrary rule. In McCormick v. Hollowell, 215 Iowa 638, 642, 246 N.W. 612, 614, cited by him, there had been no appeal from the conviction. The opinion, after conceding possible reversible error in the criminal trial, says: "However, the finding of reversible error will avail

nothing to the petitioner in a habeas corpus proceeding. These petitioners could have obtained their review of the judgment by appeal or by writ of error, but they waived their right in that respect. * * * the writ [of habeas corpus] will be sustained only upon a showing that the judgment entered was absolutely void as being beyond the jurisdiction of the court."

■ We are not impressed by the attempt here to raise a constitutional question by the claim that petitioner did not have a "fair and impartial trial", basing the contention upon the assertion that the trial court, over objection, allowed eight jurors to serve who upon voir dire "expressed fixed opinions as to the guilt [of petitioner] and feelings that would prevent them from rendering a fair and impartial verdict."

The abstract of record on the appeal actually shows that of the twelve jurors selected *only three were even challenged* and we find that on their voir dire examination the eligibility of these three was satisfactorily established, judged by any fair and impartial standard. One said: "I know of no reason why I could not fairly and impartially try this case if I am selected as a juror. * * * The opinion I now have is not fixed." Another designated his "opinion" as rather an "impression." The third, referring to his opinion based "on what I have read and heard", added: "It would not have any weight with me if I should be selected * * *. I would follow the evidence and the law."

Nor is the suggestion warranted that there was "a good defense" known to defense counsel *(petitioner's own brother)* but not presented to the jury. The petition attempts to support this charge by reargument of the evidence as to the course of the bullet (fired from ambush) that killed the murdered sheriff and by alleged testimony that petitioner "was one-half mile from the scene of the shooting within ten to twelve seconds after the shot was fired" and that his "counsel failed to point out and explain to the jury that it would have been humanly impossible for plaintiff [defendant there] to have been in said barn and fired the fatal shot." There is no merit in the contention.

Petitioner asserts that the record of the proceedings in the criminal case showed a "conspiracy to deprive [him] of his constitutional right to a fair and impartial trial" and that "the pro-

ceedings were so grossly irregular that the trial court lost jurisdiction and the judgment rendered therein was void."

It would be sufficient here to answer these irresponsible statements by the mere quotation above-cited from Reeves v. Lainson. We have taken the trouble nevertheless to examine carefully the abstract of record in the criminal case. We find no basis for them. The arguments to the jury, so far as the abstract shows, were not reported. We have no knowledge as to what was or was not argued to the jury. It is inconceivable, or at least improbable, that defense counsel would fail to make an honest defense of his own brother under the circumstances shown in that record. There is no indication he did so fail.

III. Petitioner's theory seems to be that his trial on the criminal charge was so infected with unfairness as to impel a holding that he was denied his constitutional right to due process. The matters he cites could, however, at most constitute mere errors even if established.

We are conscious of our duty to construe and apply the general principles in cases of this kind so as to preserve, not destroy, constitutional safeguards. It may be conceded there are exceptional cases to which they do not apply. 39 C. J. S., Habeas Corpus, section 15, page 449 et seq.; 25 Am. Jur., Habeas Corpus, section 13, note 10, page 152. But see also sections 55 and 28.

There is no occasion however to go into that difficult field here. No factual allegation in the petition and nothing in the record of petitioner's criminal trial could, in our judgment, support the pleaded conclusion that he was denied any constitutional right. We are abidingly convinced he had a fair and impartial trial.

IV. The record here shows various earlier unsuccessful attempts to invoke habeas corpus. The trial court refers to them as "numerous petitions that have been presented to this and other courts." The petition, after expressly naming two (in 1942 and 1952 respectively), adds "and also by various other petitions drawn and filed by the plaintiff wherein the writ was refused for not being properly drawn."

We shall not discuss these various proceedings except to say

they show the matters urged here have already been adjudged against petitioner, not only on the criminal trial and appeal but in later proceedings as well.

V. We indicated in Division II that there was one contention made here not involved in the criminal proceedings. It is alleged one Harry Dilley in a dying confession said, "I killed Fred Collings and old George Gibson is doing time for it."

This proposition has been urged and rejected at least twice in state court habeas corpus attempts and was set forth in a petition presented to the United States Supreme Court.

It would seem to come squarely within the rule that after-discovered evidence cannot be considered in a habeas corpus proceeding. 39 C. J. S., Habeas Corpus, section 26a.(4), page 492, note 42; Figueroa v. Saldana, 1 Cir., District of Porto Rico, 23 F.2d 327. Springstein v. Sanders, 182 Iowa 658, 164 N.W. 622, L. R. A. 1918F 1076, is in point under quite analogous circumstances. In that case the opinion squarely holds that in such circumstances petitioner's only recourse is by application for executive clemency. We think that is the situation here but make no recommendation to the pardoning authority.

Petitioner had a fair trial so far as can be discovered through the mists of more than a quarter of a century. Several of his neighbors testified his general reputation for moral character was bad. No one testified to the contrary.

He was, however, according to his own testimony, something of a philosopher, albeit a cynical one. There had been litigation between him and the sheriff. Gibson v. Collings, 200 Iowa 721, 205 N.W. 304. He testifies: that at one time a witness told him "that if he was in my place he would shoot the sheriff if he ever came on the place again"; and that he (Gibson) replied: "* * * killing a man simply puts him out of his misery, and is doing him a favor; the way to torture a man is to let him live."

He has had twenty years to ponder the wisdom of his philosophy.

Upon the record the decision of the trial court must be and is affirmed.—Affirmed.

All JUSTICES concur.