STATE EX REL. FOSTER, Appellant, v. UTTECH, County Sheriff, Respondent.

*June 10——July 1, 1966.*

666

For the appellant there were briefs by *Grootemaat, Cook & Franke,* attorneys, and *Francis R. Croak* and *David J. Hase* of counsel, all of Milwaukee, and oral argument by *Mr. Hase* and *Mr. Croak.*

For the respondent the cause was argued by *Donald Johns,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HALLOWS, J. The issue presented is whether Foster is legally detained upon the governor's warrant which enjoys a *prima facie* presumption of legality. More precisely stated, can this court in testing the legality of the arrest in a *habeas corpus* proceeding go behind the governor's rendition warrant and examine the affidavit and warrant and other documents issued in Indiana

to determine whether they meet the constitutional requirements for arrest for extradition purposes and the statutes of Wisconsin for such purpose?

The constitution of the United States in sec. 2, art. IV, provides, "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." This constitutional requirement was implemented by federal legislation to provide for the procedure in demanding extradition. 18 USCA, sec. 3182. This section provides that whenever the executive authority of a state demands a person as a fugitive from justice and produces a copy of an indictment found, or of an affidavit made before a magistrate charging the person demanded with having committed the crime certified as authentic, the executive authority of the state to which the person has fled will cause him to be arrested and to be delivered to the agent of the demanding state.

Many states, however, including Wisconsin and Indiana, have enacted the Uniform Criminal Extradition Act as legislation ancillary to and in aid of the federal constitution and statute. In sec. 964.02, Stats., of this act, the duty of the governor of this state to deliver up a fugitive from justice to the demanding state is made subject to the qualifications of the chapter, the provisions of the constitution of the United States, and the acts of Congress. In sec. 964.03 it is provided that no demand for extradition shall be recognized unless it is in writing showing the accused was present in a demanding state at the time of the alleged crime and that he fled from that state, and accompanied by a copy of either the indictment found, or of an information supported by, an affidavit or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant

which was issued thereon.[1] The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state and be authenticated by the executive authority making the demand.

The act further provides the governor may investigate the case, sec. 964.04, Stats., and if he decides the demand should be complied with shall sign his warrant of arrest which warrant must substantially recite the facts necessary to the validity of its issuance, sec. 964.07. However, no person arrested upon the governor's warrant may be delivered to the agent of the demanding state unless he is first taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged and that he has a right to demand and procure legal counsel and if the prisoner or his counsel shall state he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time within which to allow him to apply for a writ of *habeas corpus*. Sec. 964.10.

It is clear that evidence which goes to the guilt or innocence of the accused may not be inquired into, either by the governor or any proceeding after the demand for extradition if a charge of a crime in legal form has been presented to the governor except as such issue is indirectly involved in the identification of the person held as the one charged with the crime, sec. 964.20, Stats. While evidence in the trial court was taken in this case as to what probable cause the police officer had for swearing to the affidavit on which the warrant was issued, we do not think this type of evidence goes to guilt or innocence because that issue is not decided. Such evidence goes to the validity of the warrant. In *Kojis v. Barczak* (1953), 264 Wis. 136, 58 N. W. (2d)

---

[1] The copy of the warrant is not required by the federal statute, 18 USCA, sec. 3182.

420, and in *State ex rel. Krueger v. Michalski* (1957), 1 Wis. (2d) 644, 85 N. W. (2d) 339, this court probably took a limited and narrow view of what evidence may be admitted to go behind the governor's warrant, but we do not in this case reach the scope of the evidence because the Indiana documents on their face are insufficient to sustain the rendition warrant of the governor.

We think this court in a *habeas corpus* proceeding may examine into constitutional questions affecting the legality of the arrest in this state for extradition at least where constitutional standards are shown not to have been complied with on the face of the documents. If this court was restricted solely to the questions of identity, of fugitive status, and of whether an extraditable crime is charged, there would be very little purpose in providing a statutory right to a *habeas corpus* "to test the legality of his arrest." The legality of arrest on the governor's warrant at most is only *prima facie* valid. *In re Cohen* (1952), 23 N. J. Super. 209, 92 Atl. (2d) 837, affirmed, 12 N. J. 362, 96 Atl. (2d) 794. Not to examine the sufficiency of the foundation documents on direct attack as in a *habeas corpus* proceeding would make the presumption conclusive. Nor is there any purpose in requiring copies of the information or affidavit and warrant if they are not to be examined to see if the demand or requisition is proper and can serve as a valid basis for a governor's rendition warrant.

In a recent case of *State v. Limberg* (Minn. 1966), 142 N. W. (2d) 563, the Minnesota court under a statute similar to sec. 964.03, Stats., examined the underlying affidavit and warrant of the state of Michigan. In discussing the additional point involving whether the accused was in Michigan at the time of the extradition, the court asked, "Is the presumptive effect of the rendition warrant when supported by affidavits accompanying the demand for extradition sufficient in itself to repel the positive testimony of the appellant that he was not present in the

demanding state?" The court held it was not and it was incumbent upon the demanding state to present some testimony to contradict the positive declaration. In *Kojis* this court examined the copy of the affidavit and warrant upon which the requisition was made and which furnished the basis for the governor's warrant in order to determine whether they complied with sec. 964.03, in substantially charging the person with having committed a crime in North Carolina and this in view of the certification by the governor of North Carolina that the affidavit and warrant charged a crime. In *State ex rel. Wells v. Hanley* (1947), 250 Wis. 374, 27 N. W. (2d) 373, this court, while it refused to inquire on *habeas corpus* into the legality of an Alabama imprisonment because that issue on *habeas corpus* was not before it, stated the purpose of *habeas corpus* was to inquire into the detention under the fugitive warrant issued in this state. See *State ex rel. Keehn v. Capelle* (1962), 17 Wis. (2d) 116, 115 N. W. (2d) 487; also *State v. Klein* (1964), 25 Wis. (2d) 394, 130 N. W. (2d) 816, certiorari denied, 380 U. S. 951, 85 Sup. Ct. 1083.

In *State ex rel. White v. Simpson* (1965), 28 Wis. (2d) 590, 137 N. W. (2d) 391, we determined the constitutional guaranties as interpreted by the United States supreme court required warrants of arrests to be issued by independent magistrates and upon a showing of probable cause. We stated:

"As a result of the United States supreme court cases, it is constitutionally essential that the magistrate be mindful of the underlying circumstances before he authorizes the issuance of a warrant. The magistrate may not accept without question the suspicions or conclusions of a complainant but, on the contrary, must determine the existence of probable cause after being apprised of the relevant facts. In performing this function, the magistrate or court commissioner serves as a judicial officer and must act in a neutral and detached manner. He must receive an adequate answer to this hypothetical question: 'What makes you think that the defendant

committed the offense charged?' *Jaben v. United States* (1965), 381 U. S. 214, 224, 85 Sup. Ct. 1365, 14 L. Ed. (2d) 345."

The Indiana proceedings do not meet this standard. The record consists of: An affidavit by James V. Dabner, a police officer, subscribed to before a justice of the peace of Marion county in which Dabner swore on oath that Isaac Foster on the 7th day of December, 1962, in Marion county, Indiana, robbed Gabe Cohen and Richard Riding of $2,000; a warrant of arrest for Isaac Foster to answer the affidavit for robbery signed by Edwin McClure, the clerk of the criminal court of Marion county by a Constance Schulmeyer; [2] a certification that these two documents constituted the proceedings had on September 23, 1964, before Honorable Saul I. Rabb, judge of the criminal court of Marion county signed by clerk Edwin McClure; a certificate by Saul I. Rabb, the presiding judge, that the attestation and certificate of McClure are in due form of law and McClure was the clerk; and a certification of McClure that Saul I. Rabb was the presiding judge of the court. These documents were accompanied by a request of the prosecuting attorney to the governor of Indiana for his requisition to have Foster extradited. Upon these documents the governor of Indiana issued his requisition to the governor of Wisconsin. Nowhere in these documents does it appear the issuance of the warrant was by a magistrate or on probable cause. True, the affidavit charges a crime but it does not meet the constitutional requirements of *White v. Simpson, supra.* So far as the record shows, the deputy clerk accepted this insufficient affidavit without a determination of probable cause and issued the warrant. The duty of the governor of this state to have an alleged

---

[2] We note in Assembly Bill No. 1104 introduced in the legislature last month that sec. 954.02, Stats., is amended to require the complaint to be made before a magistrate who shall sign the warrant of arrest.

fugitive arrested and delivered up is subject to the provisions of the constitution of the United States. Sec. 964.02, Stats.

Under sec. 328.01, Stats., this court is required to take judicial notice of the statutes of sister states. We note that Indiana has a Uniform Criminal Extradition Act and besides has a special act pertaining to warrants of arrest of fugitives from Indiana. See 4 Burns, Indiana Statutes Anno. (part 1), sec. 9–418 [2071], p. 18. This section requires the warrant for the arrest of a fugitive shall ·be issued by the judge of the circuit, superior, criminal or city court or the justice of the peace before whom the affidavit is filed. The present record shows the affidavit was made before a justice of the peace and a warrant issued, not by the justice of the peace but by a deputy clerk. The Indiana statute applicable to general warrants of arrest, which is sec. 9–1001, provides:

"**Issuance of warrant or summons.**—(a) When an indictment is found or an affidavit filed against a person charging him with the commission of an offense, the court or a judge thereof shall, subject to the provisions of subsection (b) [of] this act, direct the clerk to issue immediately a warrant of arrest returnable forthwith. If no order is made, the clerk shall issue warrants upon all indictments and affidavits within ten [10] days after the filing of such indictments and affidavits."

There is no order in the record of the judge directing the clerk to issue the warrant immediately nor is there any record of any proceeding before the judge, much less that probable cause was determined. Our sec. 964.03, Stats., seems to require the warrant to be issued by the magistrate before whom the affidavit is made. In *Ex parte Rubens* (1951), 73 Ariz. 101, 238 Pac. (2d) 402, certiorari denied, 344 U. S. 840, 73 Sup. Ct. 50, 97 L. Ed. 653, the court interpreted the federal act, 18 USCA, sec. 3182, to require the making of the affidavit before the magistrate who issues the warrant.

We think on this record that the Indiana documents are defective and insufficient to sustain the Wisconsin governor's warrant. In *Hattaway v. Culbreath* (Fla. 1952), 57 So. (2d) 661, it was held that documents from Alabama for extradition did not comply with sec. 941.03 of the Florida statutes, which is similar to our sec. 964.03, and were insufficient to support a governor's rendition warrant and therefore the issuance of the warrant was illegal and void. In *Ex parte Harck* (1955), 160 Tex. Crim. Rep. 602, 274 S. W. (2d) 74, it was held the Arizona documents for extradition did not meet the Texas Uniform Criminal Extradition Act, sec. 3, art. 1008a, which is substantially the same as our sec. 964.03, and that fact was sufficient to overcome the presumption of the legality and sufficiency of the rendition warrant of the governor.

In some of the older cases the attitude has prevailed in extradition cases that the defects in the demand are questions to be raised in the demanding state after the accused is returned. We think there is no justice in saying to a person in Wisconsin subject to our laws and entitled to the protection of his rights, that he may be extradited but may contest the legality of his extradition *ex post facto*. Nor is it just to put the accused to the expense, inconvenience and jeopardy involved in a defense in the demanding state when this preliminary prerequisite to extradition can be determined here. Perhaps we went too far in characterizing the extradition process as satisfying the purposes of a preliminary hearing as we did in *Johns v. State* (1961), 14 Wis. (2d) 119, 109 N. W. (2d) 490. And, while a fugitive is not entitled to asylum in the international sense, he is entitled to lawful arrest.

It should also be pointed out the governor's warrant refers as its basis only to the affidavit made before the magistrate and also requires the delivery to the agent of Indiana after only giving Foster a reasonable time to advise with friends and counsel. This form of warrant

does not comply with sec. 964.07, Stats., and is in conflict with secs. 964.03 and 964.10. Our opinion, however, is not based upon such imperfections.

We hold then the trial court was in error in not examining into the legality of Foster's detention under the governor's warrant and since the Indiana requisition documents do not meet the requirements of sec. 964.03, Stats., or of constitutional standards, the rendition warrant was unlawfully issued and Foster is entitled to his discharge.

*By the Court.*—The order appealed from is reversed, with direction to discharge Foster from the custody of the sheriff of Dodge County.

GORDON, J. (*dissenting*). I must respectfully dissent. This court is not in a fair position to explore the debatable facts involved in the alleged unconstitutionality of the Indiana warrant of arrest. There is indeed doubt whether the Indiana proceedings were proper, but such doubt should be resolved in the Indiana courts, not in the Wisconsin supreme court. Their proceedings are *prima facie* valid, and since the claimed defect is not entirely clear from the face of the documents, we should not purport to resolve this question. *State ex rel. Krueger v. Michalski* (1957), 1 Wis. (2d) 644, 85 N. W. (2d) 339; *Kojis v. Barczak* (1953), 264 Wis. 136, 58 N. W. (2d) 420.

As tardy conformists to the requirements of the United States constitution recognized by us in *State ex rel. White v. Simpson* (1965), 28 Wis. (2d) 590, 137 N. W. (2d) 391, we should be particularly reluctant to assume that a sister state still fails to recognize the light which we so recently observed.

I am authorized to state that Mr. Chief Justice CURRIE joins in this dissent.